HALL, Circuit Judge,
dissenting:
The majority today correctly states that the substantial evidence standard applies to adverse credibility determinations, but in the process refuses to acknowledge the body of Ninth Circuit law outlining when an Immigration Judge’s (IJ) basis for making an adverse credibility determination is itself illegitimate and, thus, not accorded deference upon review. Here, the IJ rested his adverse credibility determination solely on impermissible grounds. I respectfully dissent.
“Although the substantial evidence standard is deferential, an adverse credibility finding must be based on specific, cogent reasons, which are substantial and bear a legitimate nexus to the finding.” Chebchoub v. INS, 257 F.3d 1038, 1043 (9th Cir.2001) (internal quotations and citations omitted). “[W]e will not uphold an adverse credibility determination finding unless the IJ or BIA specifically explains the significance of the discrepancy or points to the petitioner’s obvious evasiveness when asked about it.” Shah v. INS, 220 F.3d 1062, 1068 (9th Cir.2000) (citations omitted).
Here, the IJ based his adverse credibility determination solely “on the simple fact that [Odesh] could not identify the name of the party headed by former president Saddam Hussein.” The IJ did not rely on demeanor evidence, nor was there any other discrepancy between Odesh’s oral testimony and his application, or any internal inconsistencies within his testimony. For purposes of evaluating the adverse credibility determination, it does not matter if Odesh either never knew the Ba’ath Party name or simply found it not important enough to be etched indelibly in his memory.[1] Odesh’s ignorance of the Ba’ath Par *692 ty name is a minor omission unless it “relates to the basis for his alleged fear of persecution” and goes to the “heart of his asylum claim.” Chebchoub, 257 F.3d at 1043. Odesh testified that the “party” was Saddam Hussein’s party, the members of the party persecuting him were part of the government, they accused him and his family of being spies and took him to the party’s prison, and that the party was both a political and religious party. Odesh provided detailed testimony, wholly consistent with his declaration, sufficient to enable the IJ, and any other reasonable observer, to identify his persecutors. See Aguilera-Cota v. INS, 914 F.2d 1375, 1381-1383 (9th Cir.1990) (relying on the fact that petitioner did not lie or misrepresent facts on his asylum application, there was no contradiction between the application and the testimony, nothing suggested that the petitioner changed his account of the events, and there was no contradictory evidence in the record as a whole); see also Alvarez-Santos v. INS, 332 F.3d 1245, 1254 (9th Cir.2003) (holding that some non-English-speaking or illiterate applicants may have facts included in their applications by preparers, but that those inconsistencies are insufficient grounds for an adverse credibility determination unless coupled with other evidence of dishonesty or evasive answering).
Though Odesh supplied country conditions evidence that fully corroborated his testimony, from the record, it does not appear that the IJ considered it at all in making his adverse credibility determination. See Chebchoub, 257 F.3d at 1044 (noting importance of country conditions evidence in evaluating context of alleged persecution). In light of the total circumstances of this case, it is not material that Odesh, a Christian Iraqi unable to read or write, completely excluded from the political system, and discriminated against since childhood by Muslims, either does not remember or does not know the name of the Ba’ath Party, a fact which does not bear on his fear of, or ability to identify, his persecutors.
The majority states that the IJ’s speculation was not critical to the adverse credibility determination. I disagree. Other than a bare conclusory statement that Odesh’s inability to provide the proper name of the party was “at the core of his claim,” the IJ’s speculation that Odesh did not live in Iraq is the only explanation of the significance of Odesh’s discrepancy provided. See Shah, 220 F.3d at 1068. There is no evidence to support the IJ’s assumption, which does not, in fact, relate to Odesh’s persecution. See Gui v. INS, 280 F.3d 1217, 1226 (9th Cir.2002) (IJ’s own opinions do not constitute a “legitimate articulable basis” to support an adverse credibility determination); see also Shah, 220 F.3d at 1071-1072 (holding that adverse credibility determination could not be upheld where IJ speculated, without any evidence, that documents were unreliable or forged and granting asylum where petitioner’s testimony was internally consistent and comported with asylum application). Odesh’s identity as an Iraqi and presence in Iraq was not only uncontested, but was not an issue at all in this case. Once Odesh established through uncontested evidence that he was, in fact, an Iraqi citizen and present in Iraq at the time of his persecution, it is unclear what relevance the IJ’s speculation could have in this case.
In short, Odesh’s inability to ascribe the proper name of the Ba’ath Party has no *693 bearing on his fear of persecution, or his honesty. See Aguilera-Cota, 914 F.2d at 1382. His testimony was internally consistent and comported with his asylum application, including dates, and the documents he submitted as corroboration. See Shah, 220 F.3d at 1072. Because the IJ’s credibility determination was based on impermissible speculation, it is not entitled to any deference on review. I would instead remand to the BIA to determine Odesh’s asylum eligibility in the first instance. See Singh v. Gonzales, 439 F.3d 1100, 1113 (9th Cir.2006).

. A simple example illustrates the point. Only about one-third of Americans can name the three branches of government, despite being taught the information as part of their primary education. See http://www.ourcourts. org/about-our-courts (last visited). Ostensibly many fewer Americans can name members of the President’s cabinet, and yet, if asked if Eric Holder is the Attorney General, would likely acknowledge the truth of the statement, particularly if they had recently seen news coverage of his office. Similarly, Odesh's statement that he does not know the name of the Ba’ath Party does not mean that the name *692 would not sound familiar to him, would seem incorrect to him, or even that he has never been able to name the party.